**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

September 24, 2026

Paul A. Palange, Jr.
87 James Street
Lodi, NJ 07644
*Pro se Plaintiff*

Vando Cardoso
Cardoso Law
592 Ridge Road
Suite 2
North Arlington, NJ 07031
*Counsel for Defendants Borough of Lodi, Scott A. Luna and Donald Scorzetti*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re: *Palange v. Borough of Lodi et al., Civ. No. 26-2375 (SDW) (LDW)***

Parties:

Before this Court are Defendants Borough of Lodi, Scott Luna, and Donald Scorzetti's (collectively, "Defendants") Motion to Dismiss (D.E. 4) *pro se* Plaintiff Paul Palange's ("Plaintiff") Complaint (D.E. 1 ("Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(5) and 12(b)(6), and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), pursuant to Rule 65 and Local Civil Rule ("Local Rule") 65.1. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Opinion is issued without oral argument pursuant to Rule 78. For the reasons set forth herein, Defendants' Motion to Dismiss is **DENIED** and Plaintiff's TRO Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. The Ordinance and Plaintiff's Drone

Plaintiff is a resident of the Borough of Lodi ("the Borough"), New Jersey, and operates small, unmanned aircraft systems ("UAS"), also commonly called drones, registered with the Federal Aviation Administration ("FAA"). (Compl. ¶ 2.) From February through July 2025, police officers regularly visited Plaintiff's property to inspect Plaintiff's drone and inquire about his flights. (*Id.* ¶ 3.) On multiple occasions, Plaintiff produced the drone's FAA and the Low Altitude Authorization and Notification Capability ("LAANC") authorization paperwork and explained that the flights were launched and landed on private property and were recreational in nature. (*Id.*) Officers also inspected the drone and confirmed that it had no camera. (*Id.*)

On July 16, 2025, Plaintiff was served in court with Ordinance Chapter 217—Drones and Unmanned Aircraft (the "Ordinance"). (*Id.*) On July 18, July 22, and July 30, 2025, Plaintiff was served with summonses alleging violations of the Ordinance[1]. (*Id.*) The Ordinance prohibits drones from flying in any airspace below 400 feet within the Borough and prohibits unmanned aircraft from flying below 400 feet over residential or commercial zones, roads, public buildings, parks, and property. (D.E. 4-3.) The Ordinance distinguishes between a "drone" and "unmanned aircraft". (*Id.*) A drone is defined as either: (1) an unmanned aircraft equipped with a "sensing device", or a device capable of acquiring data from its surroundings, such as a camera, microphone, thermal detectors, etc. or (2) capable of any data collection. (*Id.*) An unmanned aircraft is defined as one that does not possess any sensing device and is not capable of any data collection. (*Id.*) The Ordinance exempts the use of drones and unmanned aircraft by any law enforcement or emergency services agencies, and provides that notwithstanding the Ordinance, any drone use in accordance with FAA regulations will be permitted. (*Id.*)

B. Procedural History

On March 6, 2026, Plaintiff filed a three-count Complaint and a Motion for Temporary Restraining Order against Defendants. (D.E. 1, 2.) Plaintiff's Certificate of Service states that on the same date, Plaintiff served the Complaint on the Chief of Police, Donald Scorzetti ("Scorzetti") by hand delivery and served Borough Mayor Scott A. Luna ("Luna") by overnight mail. (Compl. at 2.) Defendants timely moved to dismiss, and briefing followed[2]. (D.E. 4, 16.)

## II. LEGAL STANDARD

A. Dismissal Pursuant to Rule 12(b)(5)

[1] Although Plaintiff does not allege what fines or other consequences resulted from the summonses, receipt of a summons itself can satisfy the injury-in-fact requirement for standing purposes. *Falcone v. Dickstein*, 92 F.4th 193, 203 (3d Cir. 2024).

[2] On April 1, 2026, Plaintiff requested an extension of time to file his opposition brief and included a "short Opposition" in the same filing. (D.E. 5.) This Court granted the extension on April 14, 2026, extending Plaintiff's deadline to May 6. (D.E. 8.) Plaintiff did not meet that deadline but filed his opposition brief on May 14, 2026. (D.E. 16.)

A complaint may be dismissed pursuant to Rule 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Rule 4(c) provides a summons must be served with a copy of the complaint, and that it is the plaintiff's responsibility to do so. Fed. R. Civ. P. 4(c). If the plaintiff does not properly serve the defendant with a copy of the summons and complaint, the court may dismiss the case for lack of jurisdiction over the defendant. *Serfess v. Equifax Credit Info. Servs., LLC*, No. 13-0406, 2015 WL 501972, at *2 (D.N.J. Feb. 5, 2015) (citing *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1996)).

B. <u>Dismissal Pursuant to Rule 12(b)(6)</u>

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether allegations are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

C. <u>Temporary Restraining Order</u>

The standard for issuing a temporary restraining order and a preliminary injunction is the same. *See Interior Motives, Inc. v. Salvatore*, No. 20-5178, 2020 WL 2611517, at *2 (D.N.J. May 22, 2020) (quoting *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009)). "A preliminary injunction is an extraordinary remedy that is never to be awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). When considering whether to grant a preliminary injunction, courts must decide whether the party seeking the injunction has shown: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)). The Third Circuit has placed particular weight on the first two factors, instructing that it "cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." *Hoxworth v. Blinder,*

*Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 350 (D.N.J. 2020) ("A court will consider all four factors, but the first two are essential: A court may not grant injunctive relief, 'regardless of what the equities seem to require,' unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm." (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000)). If a court finds that the first two factors weigh in favor of the moving party, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## III. <u>DISCUSSION</u>

### A. <u>Insufficient Service of Process</u>

A Rule 12(b)(5) motion challenges the sufficiency of service of process—whether the summons and complaint were served on the proper person and by an authorized method. Rule 4(j)(2) governs service on a local governmental entity and permits service either by delivering the summons and complaint to the entity's chief executive officer or by serving the entity in the manner prescribed by state law. Fed. R. Civ. P. 4(j)(2). Additionally, Rule 4(m) requires service within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m).

Here, Defendants argue that Plaintiff's initial service efforts were defective and seek dismissal under Rule 12(b)(5). (D.E. 4 at 17–21.) However, any defects were promptly cured, and service was completed within the Rule 4(m) period. On April 13, 2026, Plaintiff's process server served the Borough by serving Borough Manager Marc N. Schrieks and also served Defendant Scorzetti the same day. (D.E. 9, 10.) As to Defendant Luna, Magistrate Judge Leda D. Wettre granted Plaintiff's Motion for Alternative Service and deemed his May 18, 2026 service by regular and certified mail good and sufficient. (D.E. 19 at 4; D.E. 17-1.) Because all Defendants were properly and timely served under Rule 4, dismissal under Rule 12(b)(5) is unwarranted, and this Court will proceed to the Rule 12(b)(6) analysis.

### B. <u>Field and Conflict Preemption</u>

Rooted in the Supremacy Clause, the doctrine of federal preemption provides that federal law may supersede conflicting state law, rendering the state law unenforceable. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Preemption generally takes three forms: express, field, and conflict. *See id.* at 399–400. As relevant here, field preemption applies when the federal regulatory scheme is so pervasive that it leaves no room for supplementary state regulation, or when the federal interest is so dominant that it is assumed to preclude state regulation in the area. *Id.* at 399. Conflict preemption, also known as obstacle preemption, arises when state law conflicts with federal law, including when compliance with both is a "physical impossibility", or when state law stands as an obstacle to the execution of Congressional objectives. *Id.* (quoting *Fla. Lime &*

*Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)); *Transcon. Gas Pipe Line Co., LLC v. Pennsylvania Env't Hearing Bd.*, 108 F.4th 144, 158 (3d Cir. 2024). In all events, congressional intent is the touchstone of the preemption inquiry. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

i. Field Preemption

Congress has vested the FAA with exclusive authority over the navigable airspace and granted it broad regulatory discretion to promote aircraft safety and the efficient use of the airspace. 49 U.S.C. § 40103(a)(1). Because federal law has comprehensively occupied these areas, state or local regulations are preempted to the extent they are directed at aviation safety or the efficient use of airspace. *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999). Although Congress has extensively regulated aviation, it has not necessarily displaced all state and local authority touching the aviation industry in every aspect. *Sikkelee*, 822 F.3d at 687; *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 126 (3d Cir. 2010).

This regulatory scheme applies directly to unmanned aircraft systems, commonly referred to as drones. In 2012, Congress directed the FAA to develop a comprehensive plan to integrate UAS into the national airspace system. *See* FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, 126 Stat. 11, 73 (2012). Under this mandate, the FAA promulgated UAS-specific regulations, including the requirement that a UAS be operated below 400 feet above ground level, or within a 400-feet radius of a structure. 14 C.F.R. § 107.51(b). The FAA has also expressly contemplated a role for state and local authorities in regulating certain aspects of UAS operations. In its 2023 Fact Sheet on State and Local Regulation of Unmanned Aircraft Systems (the "Fact Sheet"), the FAA identifies "legitimate state and local interests" and explains that laws traditionally within state and local authority—such as land use, zoning, privacy, trespass, emergency medical services, and law enforcement operations—are examples of regulations affecting UAS use that likely are not subject to preemption. *State and Local Regulation of Unmanned Aircraft Systems (UAS) Fact Sheet*, Fed. Aviation Admin. (July 14, 2023), https://www.faa.gov/sites/faa.gov/files/State-Local-Regulation-of-Unmanned-Aircraft-Systems-Fact-Sheet.pdf.

Here, the Ordinance is field preempted because it regulates aviation safety and airspace management—areas occupied by federal law. As a threshold matter, Plaintiff's aircraft qualifies as an "unmanned aircraft" under the Ordinance because it has no camera, and Defendants do not allege that it contains any other sensing device. (Compl. ¶ 3.) The Ordinance broadly prohibits "drones" from operating anywhere in the Borough below 400 feet and separately prohibits "unmanned aircraft" from operating below 400 feet over residential or commercial zones, roads, and public buildings, parks, and other public property. (D.E. 4-3 at 1.) Although Defendants characterize the Ordinance as a privacy and public welfare measure and contend that its distinction between "drones" and "unmanned aircraft" reflects a narrow effort to regulate privacy-intrusive technology, the Ordinance in substance dictates where UAS may fly and at what altitude—core questions of airspace management and aviation safety. (D.E. 4 at 22–26.) Consistent with that conclusion, the FAA's Fact Sheet identifies as likely preempted state or local measures that restrict

UAS flight altitude or flight paths "in order to protect the safety of individuals and property on the ground." The Ordinance fits that description. Moreover, Defendants' privacy rationale is undermined by the Ordinance's application to "unmanned aircraft", which by definition, lack a sensing device and are incapable of data collection, and thus cannot implicate the asserted privacy concern.

Defendants argue that Plaintiff has misconstrued the Ordinance and that it is consistent with FAA regulations because its federal savings clause, § 217-4D, provides that notwithstanding the Ordinance's other provisions, the authorized and lawful operation of drones in accordance with specified FAA regulations is permitted. (*Id.* at 25.) However, where Congress occupies a field, even complementary or parallel state regulation is impermissible. *Arizona v. United States*, 567 U.S. at 401. Field preemption reflects a congressional decision to foreclose state regulation in the area altogether, even when it tracks federal standards. *Id.* Accordingly, the Ordinance's carve-out exemption does not cure the preemption problem or insulate the Ordinance from field preemption.

ii. Conflict Preemption

Even if a regulation is purportedly directed at interests other than aviation safety or airspace efficiency, it may still be preempted if it materially interferes with the reasonable use of the airspace and thereby frustrates the federal objective of integrating UAS into the national airspace. In *Singer v. City of Newton*, 284 F. Supp. 3d 125 (D. Mass. 2017), the ordinance was framed primarily as a privacy measure, but the court held it was preempted because its prohibition on UAS operations below 400 feet over public and private property without express permission functioned as a wholesale ban on drone use within the city and undermined Congress's and the FAA's UAS integration objectives. *Id.* at 132.

The same is true here. FAA regulations generally limit small UAS operations to 400 feet above ground level, while the Ordinance prohibits flight below 400 feet within the Borough. (D.E. 4-3 at 1.) Read together, those restrictions leave no meaningful altitude band in which a UAS may lawfully operate, effectively barring UAS operations in the Borough. Although the Ordinance's restrictions on "unmanned aircraft" are framed in terms of specified locations rather than a wholesale prohibition, the covered areas—residential and commercial zones, roads, and public buildings, parks and other public property—are so extensive that the Ordinance still operates as an essential ban. (*Id.*) Because the Ordinance thus stands as an obstacle to the FAA and Congress's objectives to integrate UAS into the national airspace, it is conflict preempted. The FAA's recognition of limited state and local co-regulation does not extend to a regime that practically prohibits UAS operations across an entire town. Accordingly, as the Ordinance is unenforceable under preemption principles, Defendants' Motion to Dismiss fails.

C. <u>TRO Motion</u>

As set forth above, Plaintiff has demonstrated a likelihood of success on the merits of his preemption claims, satisfying the first TRO factor. As to irreparable harm, Plaintiff argues that

absent injunctive relief, enforcement of the Ordinance will immediately bar him from engaging in federally authorized flights and will chill recreational and other protected activities. (D.E. 2 at 1.) Plaintiff further contends that the loss of the ability to use his equipment and to engage in livelihood or expressive activity constitutes irreparable harm. (*Id.*)

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Conduct is protected by the First Amendment when in light of the nature of the activity and the surrounding factual context, it is "sufficiently imbued with elements of communication to fall within the [First Amendment's] scope." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974)).

Here, Plaintiff has not shown irreparable harm absent injunctive relief because the Ordinance does not implicate any First Amendment freedom. Plaintiff characterizes his drone flights as recreational and does not allege that his livelihood depends on them. (D.E. 2 at 1, Compl. ¶ 3.) Plaintiff has also failed to establish that his flights constitute protected expressive conduct—that they are intended to convey a particular message or are otherwise "sufficiently imbued with elements of communication" to fall within the First Amendment's scope. *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 158. At most, enforcement of the Ordinance would temporarily limit Plaintiff's recreational enjoyment, which is not the type of expressive activity the First Amendment protects.

Even if Plaintiff's asserted injury is framed as a deprivation of a property or liberty interest rather than a First Amendment injury, he must still demonstrate harm that cannot be adequately remedied by money damages. *Reedy v. Borough of Collingswood*, No. 04-4079, 2005 WL 1490478, at *10 (D.N.J. June 22, 2005) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000)). While the value of Plaintiff's preferred ability to fly his drones where and when he chooses may be difficult to quantify, difficulty is not enough: the Third Circuit requires a showing that damages are impracticable or essentially incapable of calculation. *See Johnson & Johnson v. Samsung Bioepis Co.*, 173 F.4th 454, 464 (3d Cir. 2026).

Defendants argue that Plaintiff's FAA-authorized operations are already permitted under the federal savings clause, and that because the Ordinance does not actually prohibit his conduct, Plaintiff suffers no cognizable harm. (D.E. 4 at 31.) Although Plaintiff contends that officers visited his property and questioned him about his drone flights, Defendants represent that Plaintiff is not in violation of the Ordinance. (Compl. ¶ 3, D.E. 4 at 31.) Accordingly, even though the federal savings clause does not insulate the Ordinance from preemption, the present record does not show that Plaintiff faces imminent enforcement by the Borough. This weighs against a finding of irreparable harm because any threatened injury is, at most, speculative rather than immediate. Accordingly, as Plaintiff has failed to establish irreparable harm, his TRO Motion fails.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**. Plaintiff's TRO Motion is also **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Leda D. Wettre, U.S.M.J.